**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

ANGELA CHRISTENSEN,

*Plaintiff,*

vs.

Case No. 15-09856-EFM

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

*Defendant.*

**MEMORANDUM AND ORDER**

Plaintiff Angela Christensen seeks review of a final decision by Defendant, the Commissioner of Social Security ("Commissioner"), denying her claim for disability insurance benefits under Title II of the Social Security Act. Plaintiff asks the Court to reverse the Administrative Law Judge's ("ALJ's") decision and award benefits based on the ALJ's alleged errors in evaluating opinion evidence, in assessing Plaintiff's credibility, and in failing to resolve a conflict between the vocational expert's ("VE's") testimony at the hearing and the Dictionary of Occupational Titles ("DOT"). Because the Court finds that the ALJ's decision is supported by substantial evidence in the record and comports with applicable law, the ALJ's decision is affirmed.

## I. Factual and Procedural Background

Plaintiff was born on October 1, 1972. Plaintiff has a high school education and worked as a sales manager, a financial analyst, and an insurance adjustor assistant until March 1, 2006. On August 8, 2012, Plaintiff filed an application for disability insurance benefits based on bipolar disorder, depression, and attention deficit hyperactivity disorder ("ADHD"). Plaintiff initially alleged a disability onset date of June 22, 1998, but later amended the disability onset date to March 1, 2008. She last met the insured status requirements of the Social Security Act on December 31, 2009, so the time period at issue in this case is March 2008 through December 2009.

Plaintiff's application was denied initially and upon reconsideration. On April 9, 2014, ALJ Janice Barnes-Williams conducted an administrative hearing, at which Plaintiff and her counsel appeared. During the hearing, Plaintiff testified that she lived with her husband and three children during the relevant time period and that she drove her children up to six days per week to their functions. She also testified that she had a number of medication-related difficulties during the relevant time period, including worsening depression symptoms, memory loss, anxiety, anger, dizziness, agitation, mania, difficulty focusing, and impulsive behavior. A VE also testified at the hearing.

The ALJ issued her decision on July 25, 2014, finding that Plaintiff suffered from the severe impairments of major depressive disorder, ADHD, and bipolar disorder. Despite these findings, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. More specifically, the ALJ determined that Plaintiff failed to meet Listing 12.04, which describes anxiety related disorders. The ALJ concluded that Plaintiff had

the residual functional capacity to perform a full range of work at all exertional levels, but that the claimant did have the following non-exertional limitations: (1) only simple, routine, repetitive tasks in a work environment free of fast-paced production requirements; (2) simple, work-related decisions, with few, if any, workplace changes; (3) no public interaction; and (4) only occasional interaction with co-workers. The ALJ therefore concluded that Plaintiff had not been under a disability for the relevant period time period of March 1, 2008, through December 31, 2009.

Given this unfavorable result, Plaintiff sought reconsideration of the ALJ's decision from the Appeals Council. The Appeals Council denied Plaintiff's request for review, and thus, the ALJ's decision became the final decision of the Commissioner. On December 2, 2015, Plaintiff filed a Complaint in the United States District Court, District of Kansas seeking reversal of the ALJ's decision and the immediate award of benefits or, in the alternative, a remand to the Commissioner for further consideration. Because Plaintiff has exhausted all of her administrative remedies, her claim is now ripe for review before this Court.

## II. Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act which provides, in part, that the "findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."[1] The Court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.[2] "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might

[1] 42 U.S.C. § 405(g).

[2] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

accept to support the conclusion."[3] The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[4]

An individual is under a disability only if she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[5] This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience."[6]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[7] The steps are designed to be followed in order. If it is determined at any step of the evaluation process that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[8]

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those severe impairments meets or equals a designated list of

---

[3] *Barkley v. Astrue*, 2010 WL 3001753, at *1 (D. Kan. Jul. 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[4] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

[5] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306–07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

[6] *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217–22 (2002)).

[7] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 416.920(a).

[8] *Barkley*, 2010 WL 3001753 at *2.

impairments.[9] If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's RFC, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments."[10]

Upon assessing the claimant's RFC, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform her past relevant work or whether she can generally perform other work that exists in the national economy, respectively.[11] The claimant bears the burden in steps one through four to prove a disability that prevents performance of her past relevant work.[12] The burden then shifts to the Commissioner at step five to show that, despite her alleged impairments, the claimant could perform other work in the national economy.[13]

## III. Analysis

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. Specifically, Plaintiff contends that the ALJ erred in (1) evaluating the opinions of her treating physician, Dr. Clark; (2) assessing Plaintiff's credibility; and (3) failing to resolve a conflict between the VE's testimony at the hearing and the DOT. The Court will address each of these arguments below.

### A. Evaluation of Opinion Evidence

---

[9] *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[10] *Barkley*, 2010 WL 3001753 at *2; *see also* 20 C.F.R. §§ 416.920(e).

[11] *Barkley*, 2010 WL 3001753 at *2 (citing *Williams*, 844 F.2d at 751).

[12] *Lax*, 489 F.3d at 1084.

[13] *Id.*

Plaintiff argues that the ALJ did not properly evaluate Dr. Clark's opinion under the treating physician rule. To determine the exact weight to assign a treating source's opinion, the ALJ must follow a two-step inquiry.[14] At the first step, the ALJ must decide whether to afford the opinion controlling weight.[15] The ALJ will give controlling weight to a treating source opinion about the nature and severity of impairment only if the opinion is: (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) consistent with other substantial evidence in claimant's case record.[16] An opinion that is deficient in either support or consistency with other evidence is not entitled to controlling weight.[17] But such a finding does not mean that the opinion automatically should be rejected.[18] Even if it is not given controlling weight, a treating opinion is still entitled to deference.[19] As such, finding that a treating source's opinion is deficient enough to be not given controlling weight only raises the question of how much weight to give the opinion, but it does not answer the question.[20]

To determine "whether the opinion should be rejected altogether or assigned some lesser weight," the ALJ must proceed to the second step of the evaluation process.[21] At the second

[14] *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

[15] *Id.*

[16] 20 C.F.R. § 404.1527(c).

[17] *Krauser*, 638 F.3d at 1330.

[18] *Id.* (quoting Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *4 (Soc. Sec. Admin. 1996)).

[19] *Hackett v. Barnhart*, 395 F.3d 1168, 1173–74 (10th Cir. 2005).

[20] *Krauser*, 638 F.3d at 1330–31.

[21] *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007).

step, the ALJ must consider the factors specified in 20 C.F.R. § 404.1527(c) for weighing medical opinions.[22] These factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the [source's] opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the [source] is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[23]

Though the ALJ is not required to discuss all six of these regulatory factors,[24] the ALJ must "give good reasons, tied to the factors specified in the cited regulations . . . for the weight assigned" a treating source opinion.[25] This analysis must be "sufficiently specific to make clear to any subsequent reviewers the weight [the ALJ] gave to the treating source's medical opinion and the reason for that weight."[26] And if the ALJ rejects a treating source's opinion, "he must articulate specific, legitimate reasons for his decision."[27]

In this case, Dr. Clark provided two opinions regarding Plaintiff's mental limitations. First, Dr. Clark provided a letter in August 2012 stating that although medication stabilized Plaintiff's mental conditions, Plaintiff could not maintain employment and her symptoms were exacerbated when she tried to work. Second, in January 2013, Dr. Clark completed a questionnaire in which she diagnosed Plaintiff with numerous mental limitations, including

---

[22] *Id.*

[23] *Krauser*, 638 F.3d at 1331; *see also* 20 C.F.R. § 404.1527(c)(1)–(6).

[24] *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

[25] *Krauser*, 638 F.3d at 1330 (citation omitted).

[26] *Id.* at 1331 (quoting *Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir. 2004)) (internal quotation marks omitted).

[27] *Cowan v. Astrue*, 552 F.3d 1182, 1188 (10th Cir. 2008) (quotation omitted).

several that were marked severe or extreme. She also opined that Plaintiff was unable to complete a normal workday or workweek without interruption and that she could not perform at a consistent pace without an unreasonable number of rest periods.

The ALJ considered Dr. Clark's 2012 and 2013 opinions when formulating Plaintiff's RFC. The ALJ noted that Dr. Clark did not indicate that Plaintiff suffered from severe limitations in 2008 and 2009, and that, even if she had, such limitations were not consistent with Dr. Clark's clinical notes from that period. The ALJ observed:

> [T]hese notes [from 2008-2009] present a much different picture of the claimant and give no indication that mental problems overwhelmed her or cause marked or extreme limitations during the relevant period. Because of these circumstances, I give greater weight to the medical notes contemporaneously taken during the period at issue as compared to assessments made years later. I also give more weight to the evaluations of Dr. Wilkinson and Dr. Schulman who based their conclusions on these contemporaneous notes.

The ALJ further noted that although Plaintiff did have some mental limitations during the relevant time period, her medication helped those limitations and she was relatively stable during the period at issue. She also stated that Plaintiff sought little treatment during the period at issue and that both Dr. Wilkinson and Dr. Schulman considered Dr. Clark's notes for the period in question and found no disability limitations.

Plaintiff takes issue with the AJL's analysis, arguing that the ALJ erred by not stating whether she gave Dr. Clark's opinions controlling weight and by not discussing all of the regulatory factors when determining what weight was appropriate. The Court recognizes that the ALJ did not specify that she did not give Dr. Clark's opinions controlling weight. But, this is not a case in which the ALJ's reasoning and conclusions cannot be ascertained. The ALJ discussed Dr. Clark's treatment notes and opinions and then expressly stated that she was giving greater weight to the medical notes taken during the period at issue than to Dr. Clark's opinions that

were provided after the period at issue. Implicit in this analysis is the conclusion that the ALJ did not give Dr. Clark's opinions controlling weight. Although Plaintiff cites to Tenth Circuit case law stating that the ALJ must state the weight given to a treating physician's opinion, the Tenth Circuit has recently upheld several decisions where the ALJ failed to expressly state whether he was giving controlling weight but provided enough analysis for the circuit to conclude that the ALJ considered the medical evidence in accordance with the applicable law.[28] The Court would have preferred the ALJ to specifically state that she did not give Dr. Clark's opinions controlling weight. However, given the ALJ's discussion and analysis of Dr. Clark's treatment notes and opinions, the Court declines to reverse on this basis.[29]

The Court also disagrees with Plaintiff's assertion that the ALJ erred by not considering all the regulatory factors in deciding how much weight to give Dr. Clark's opinions. An ALJ is not required to discuss every regulatory factor for weighing opinion evidence.[30] Here, the ALJ discussed Dr. Clark's treatment notes for Plaintiff for the period in question, which included the type of treatment provided and test results from a Global Assessment of Functioning. The ALJ also compared Dr. Clark's opinions with the medical record as a whole. As previously noted, the ALJ gave Dr. Clark's opinions from 2012 and 2013 less weight because Dr. Clark did not

[28] *See Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014) ("[T]he ALJ implicitly declined to give the opinion controlling weight. Because we can tell from the decision that the ALJ declined to give controlling weight to [the treating physician's] opinion, we will not reverse on this ground."); *see also Tarpley v. Colvin*, 601 F. App'x 641, 643-44 (rejecting the claimant's argument that the ALJ erred in "failing to state explicitly whether or not he intended to give controlling weight to her physicians' opinions before proceeding to find that they were entitled to no weight"); *Payton v. Astrue*, 480 F. App'x 465, 469 (10th Cir. 2012) (holding that although "an explicit statement" that the ALJ had discounted a treating physician's opinion "would be preferable," the ALJ stated that she considered the medical evidence in accordance with the applicable ruling, so the court took the ALJ at her word).

[29] *See Billings v. Colvin*, 2014 WL 5528683, at *6 (D. Kan. Nov. 3, 2014) (concluding that the ALJ's failure to give the exact weight given to the treating physician's opinion did not preclude the court from conducting a meaningful review of the ALJ's decision).

[30] *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (recognizing that an ALJ is not required to "apply expressly" every relevant factor for weighing opinion evidence).

indicate that Plaintiff's limitations were present during the period at issue and because they were inconsistent with her treatment notes from that period. These findings are sufficient, and thus, the Court will not reverse or remand the ALJ's decision on this basis.

**B. Credibility Analysis**

Recognizing that "some claimants exaggerate symptoms for the purposes of obtaining government benefits,"[31] an ALJ's credibility determination is generally treated as binding on review.[32] "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.[33] However, notwithstanding the deference generally given to an ALJ's credibility determination, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."[34]

In evaluating a disability claim based on nonexertional symptoms, including pain, the ALJ must first determine whether the objective medical evidence demonstrates that a claimant suffers from an underlying medically determinable physical or mental impairment.[35] If so, the ALJ must consider the relationship between the impairment and the alleged nonexertional limitation.[36] If a loose nexus exists, the ALJ must then consider all the evidence, both objective

[31] *Bolan v. Barnhart*, 212 F. Supp. 2d 1248, 1260 (D. Kan. 2002) (citing *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987)).

[32] *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990).

[33] *Wilson*, 602 F.3d at 1144 (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)) (internal quotation marks omitted).

[34] *Id.* (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1998)) (internal quotation marks omitted).

[35] *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987).

[36] *Id.* at 164.

and subjective, in determining whether a claimant's limitation is disabling.[37] Factors that may be relevant in assessing the claimant's testimony include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or non-medical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of non-medical testimony with objective medical evidence.[38]

Here, the ALJ found Plaintiff was not fully credible. She noted that Plaintiff did have some mental limitations during the period in question but that these limitations were less severe than alleged and that medication was helping Plaintiff to manage them. Plaintiff takes issue with the ALJ's analysis, arguing that the ALJ should have provided evidence-based reasons to support her conclusions. The Court disagrees.

While not in the same paragraph as the ALJ's ultimate credibility determination, the ALJ did discuss several of the factors listed above in assessing Plaintiff's credibility. Specifically, the ALJ discussed reports of improvements and stability in Plaintiff's mental function with medication. She discussed the opinions of reviewing psychologists who found Plaintiff's mental limitations less than disabling. And, she discussed Plaintiff's activities of daily living, including Plaintiff's testimony at the hearing that she was able to take care of her three young children and drive them to their various functions six days per week. Each of these are factors for an ALJ to

---

[37] *Id*.

[38] *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993) (quotation marks and citation omitted); *see also* Soc. Sec. Ruling 96-7p, 1996 WL 374186, at **4-8 (Soc. Sec. Admin. 1996). The Court recognizes that SSR 96-7p was superseded by Social Security Ruling 16-3p on March 28, 2016. Because SSR 16-3p was not in effect at the time of the ALJ's decision, the Court bases its review on SSR 96-7p.

consider in assessing a claimant's credibility.[39] Therefore, the Court concludes that the ALJ's credibility analysis is sufficient and supported by substantial evidence in the record.

**C. Vocational Expert Testimony**

If the claimant meets the burdens of steps one through four, "the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient RFC to perform work in the national economy, given her age, education, and work experience."[40] At step five, the ALJ may rely on a VE's testimony in determining whether the claimant is disabled if the ALJ's findings about the claimant's limitations are reflected in the hypothetical given to the VE.[41] The ALJ is required to resolve any apparent conflict between evidence provided by the VE and similar occupational information in the DOT.[42]

At the hearing, the ALJ questioned the VE about a hypothetical individual who could perform simple, routine, repetitive tasks with no fast-paced production requirements; only simple work-related decisions; few, if any, workplace changes; no working around the public; and only occasional interaction with co-workers. In response, the VE testified that such a person could not perform Plaintiff's past relevant work, but could perform other unskilled jobs such as laundry worker, night cleaner, and hand packager.[43] The VE also testified that her testimony was consistent with the DOT, except for particular work practices of which she had personal knowledge.

---

[39] *Thompson*, at 1489.

[40] *Lax*, 498 F.3d at 1084.

[41] *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996) (citing *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991)).

[42] Soc. Sec. Ruling 00-4p, 2000 WL 1898704, at *2 (Soc. Sec. Admin. 2000).

[43] The jobs identified by the VE are all listed as SVP level two jobs.

Plaintiff's attorney then cross-examined the VE, in part, about the reasoning level of the three jobs identified. This testimony, which Plaintiff asserts conflicts with the DOT, is as follows:

> Q: And then those jobs you provided, they all have an SVP of 2?
>
> A: Yes.
>
> Q: And do SVP [Specific Vocational Preparation] level 2 jobs require the ability to follow detailed written instructions?
>
> A: No.
>
> Q: What level of instructions is required for an SVP level 2?
>
> A: What level of instructions?
>
> Q: Yeah that they can follow?
>
> A: It's simple.
>
> Q: Okay. Do you know what the reasoning level is on those jobs from the –
>
> A: No, but I can look it up really quick. Well, the hand packager, it is a 2. And you want me to define that?
>
> Q: Sure.
>
> A: Apply common sense understanding to carry out detailed but uninvolved written, oral instructions, and deal with problems involving a few concrete variables or from standardized situations.

According to Plaintiff, the ALJ erred by not resolving the conflict in the VE's testimony that these jobs only require the ability to follow simple instructions but that the reasoning level for these jobs set forth in the DOT requires the ability to understand "detailed but uninvolved" instructions. The Court disagrees.

Social Security Ruling 00-4p only requires the resolution of *apparent* unresolved conflicts between the VE's testimony and the DOT.[44] It does not require the ALJ to search for and resolve all conflicts that may or may not be present in the testimony.[45] Upon review, the VE's testimony in this case does not create an apparent conflict. When the VE testified that SVP level two reasoning requires the ability to understand "detailed but uninvolved" instructions, she was actually clarifying her previous testimony that SVP level two jobs require the ability to follow "simple" instructions by reading the reasoning level verbatim from the DOT. In addition, Plaintiff has not offered any vocational, legal, or other authority showing a discrepancy or inconsistency in the ability to follow "simple" instructions and the ability to follow "detailed but uninvolved" instructions, and the Court declines to find one here.[46]

Perhaps the biggest problem with Plaintiff's argument is that the limitation of "simple" instructions is simply not included in Plaintiff's RFC. When questioning the VE, the ALJ did not limit the abilities of the hypothetical person to one who could only follow "simple instructions." Instead, she limited the hypothetical person to one who could perform "simple, routine, repetitive tasks" and make "simple work-related decisions." It was Plaintiff's counsel who introduced the limitation of simple instructions, and based on the testimony, appears to have

[44] *See* SSR 00-4p, 2000 WL 1898704, at *4 (stating that when the VE's testimony "appears to conflict with the DOT," the ALJ must "obtain a reasonable explanation for the apparent conflict").

[45] *See Odum v. Colvin*, 2014 WL 1246485, at *5 (D. Kan. Mar. 26, 2014) ("All kinds of implicit conflicts are possible and the categorical requirements in the DOT do not and cannot satisfactorily answer every such situation. Moreover, claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present the conflict as reversible error.") (citing *Gibbons v. Barnhart*, 85 F. App'x 88, 93 (10th Cir. 2003)).

[46] *See Jackson v. Astrue*, 2008 WL 5046378, at *4 (D. Kan. Nov. 24, 2008) (finding no conflict between an RFC limitation of carrying out "simple instructions and tasks" and an SVP level two reasoning level that requires the ability to follow "detailed but uninvolved written or oral instructions").

attempted to create error by first asking the VE if SVP level two jobs require the ability to carry out simple instructions and then asking the VE what the reasoning level was for SVP level two jobs, knowing that the reasoning level provided in the DOT required the ability to understand "detailed but uninvolved instructions."

The Court concludes that the ALJ's examination of the VE was sufficient. The ALJ complied with SSR 00-4p by asking the VE if her evidence conflicted with the DOT.[47] Because there was no apparent conflict between the VE's testimony and the DOT, nothing more was required from the ALJ.[48]

Finally, regardless of the reasoning level, the Court declines to find error at this step of the ALJ's analysis. All three jobs cited by the VE qualify as unskilled under the regulations. The definition of "unskilled work" requires "simple duties that can be learned on the job in a short period of time."[49] This is consistent with Plaintiff's RFC and ties directly to the agency's definition of unskilled work in the DOT.[50] Accordingly, the Court finds that the ALJ's decision that Plaintiff could perform the jobs cited by the VE to be supported by substantial evidence in the record. Plaintiff's assignment of error at step five is without merit.

---

[47] *See* Soc. Sec. Ruling 00-4p, 2000 WL 1898704, at *4 ("When a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT.").

[48] *Gibbons v. Barnhart*, 85 F. App'x 88, 93 (10th Cir. 2003); s*ee also Thompson v. Colvin*, 551 F. App'x 944, 949 (10th Cir. 2014) (rejecting the claimant's argument that the VE's testimony conflicted with the DOT where "the [VE] testified that the jobs he identified were consistent with a hypothetical person with [the claimant's] impairments and the DOT").

[49] 20 C.F.R. § 404.1568.

[50] *See* Soc. Sec. Ruling 00-4p, 2000 WL 1898704, at * 3 ("unskilled work corresponds to an SVP of 1-2").

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED**.

Dated this 10th day of November, 2016.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE